## Old Straight Creek Coal Corporation v. Dye et al.

(Decided February 19, 1929.)

A. G. PATTERSON for appellant.

J. S. GOLDEN for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

The appellee J. A. Dye has been awarded, under the provisions of the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987), $15 a week for a period of 416 weeks or until the sum of $6,000 has been paid by the appellant, Old Straight Creek Coal Corporation. The award was confirmed by the circuit court, and an appeal from that judgment is before us.

There is no question of law involved, as all parties agree with the well-known rule that decisions of the Workmen's Compensation Board will not be disturbed, if there is any evidence to support them. The appellant contends that the evidence submitted to the board is too vague and uncertain, and not carrying the quality of proof sufficient to sustain the award, relying upon references to such character of testimony made in Rex Coal Co. v. Campbell, 213 Ky. 636, 281 S. W. 1039, and Harlan Wallins Coal Corporation v. Carr, 220 Ky. 785, 295 S. W. 1017. It also relies upon the rule that recovery will not be sustained if based upon mere speculation as to liability. The determination of the case, therefore, rests upon the character and measure of the evidence introduced in support of the claim for compensation.

There is no conflict in the evidence, the difference between the views of the parties being based upon conclusions arising from that evidence. The facts are these: While appellee was pushing a loaded car within the mines of the Old Straight Creek Coal Corporation a track tie slipped, causing him to fall across the steel rail. In a few minutes after the fall he became sick and had to sit or lie down on a box in the mine, and shortly thereafter, as he states it, a "ridge swelled up and down" his leg, and a knot formed in his groin. This ridge, as he called it, increased in length until that night it was about a foot long and as big as his finger. It later ran down below his knee. One or two witnesses observed this condition that afternoon. He suffered all night, and the next morning visited the company's doctor, who advised him that he had ruptured a vein. Appellee also claimed that he had a broken rib by reason of this fall. He testified, and was corroborated by his son and son-in-law, that he had been physically sound before this accident and was not troubled in any way with any enlargement of the vein or rupture of any kind.

Dr. P. L. Fuson, who had been the physician for the appellant company for 12 years, testified that on the morning after the accident: "I found him with a very sore place on the chest and abdomen where, if I remember right I told him I would not be positive whether it was a cracked rib or not, later it developed it was—as to the injury to the groin, I remember I told him he had a ruptured vein instead of a hernia as we usually call it; at that time the vein extended down to the middle of the lower third of the thigh, later on continued to extend on down and went on down nearly to the ankle; when it got down that far I suggested a rubber stocking to brace the vein well; when that was done or how it was done I don't know, it was there when he came to me."

The doctor testified that ordinarily varicose veins are a long time in developing; that there are numerous causes of the condition, among them traumatism or physical injury. He stated that the knots and veins as they appeared on the appellee could possibly have been caused by the fall; that the medical authorities did not teach that varicose veins are generally slow in developing, but that "anything in the world that will cause a retarded flow of blood will produce varicose veins." He testified that, where a vein has been injured, varicosity develops within

any period from 5 minutes to 12 years after the injury is sustained. The doctor further testified that for about 2 weeks after this injury the appellee was very sick at his home and under his treatment, and that he has not been able to perform any manual labor since the accident. An examination of the appellee on the day the deposition was given, nearly a year after the accident, showed that he had no trouble whatever in his right leg.

Dr. Edward Wilson testified that he had examined appellee several times, including the day he gave his deposition, and that he had a calloused spot on his rib, showing that it had been fractured, and that he also was suffering from varicose veins in his left leg from the groin to the ankle, which was in a very bad condition, and which caused practically total disability. Upon a hypothetical question, the doctor expressed an opinion that the fall caused the condition.

The conclusions reached by the appellant company are based upon a statement in the application for compensation that appellee was "ruptured" rather than that he had a ruptured vein, and a claimed contradiction between the appellee and his son-in-law, who, upon being asked whether he knew what varicose veins are replied, "Yes, sir, I know a little something about veins;" and upon being asked whether appellee had any before the injury stated, "Not very large ones; you can see blood veins in any one." They also extract from the testimony of Dr. Fuson his answer, given in response to a question whether or not the vein was broken, that "it was that old broken vein." They further rely upon the expressions of the doctors, that varicose veins are sometimes found in men and women of the age of appellee (63), and that they often arise from other causes than injury. These inferences, that the condition was due to a pre-existing disease, constitute all the evidence supporting appellant's defense to the claim for compensation.

We consider the evidence fully supports the findings of the Workmen's Compensation Board, and the lower court did not err in approving the award.

Judgment affirmed.